**Gary McDOUGALD, Plaintiff,**

v.

**Vivian L. JENSON, Clarence Ehli, and the Honorable Arthur Verharen, in his capacity as Superior Court Judge of the State of Washington, Defendants.**

**No. MCA 84–2030–RV.**

United States District Court,
N.D. Florida,
Panama City Division.

Sept. 26, 1984.

Edward S. Stafman, Tallahassee, Fla., for plaintiff.

Douglas C. Kearney, Tallahassee, Fla., for defendants Jenson and Ehli.

David A. Bateman, Olympia, Wash., for Judge Verharen.

## ORDER AND MEMORANDUM OPINION

VINSON, District Judge.

This case involves inconsistent child custody decrees entered by the Florida and Washington state courts. It is now before this Court on the father-plaintiff's four-count amended complaint: (1) Count I seeks relief and damages pursuant to Title 42, *United States Code*, Section 1983; (2) Count II seeks the enforcement of the Florida custody decree on the basis of diversity jurisdiction and constitutional "full faith and credit;" (3) Count III seeks damages in tort for the child's "kidnapping;" and (4) Count IV seeks relief under Title 28, *United States Code*, Section 1738A. Additionally, plaintiff has moved for a preliminary injunction. By motion or agreement of the parties, and pursuant to this Court's order of August 30, 1984, this matter is also before the Court for summary judgment.

### A. Factual Background.

On June 1, 1979, the Circuit Court of Calhoun County, Florida entered a divorce decree dissolving the marriage of plaintiff Gary McDougald, and defendant Vivian McDougald Jenson, and providing for the custody of the couple's then three-year-old son, Jerimy. In accordance with the custody provisions of the decree, Jerimy lived with each parent for alternating six-month periods for the next three and one-half years. It is undisputed that he lived with his father from June 23, 1980, to the latter part of December 1980, an important period for purposes of this order. During this six-months period, the father and Jerimy resided in their long-established home in Blountstown, Calhoun County, Florida, until some time in November of 1980. During November 1980, McDougald and Jerimy moved to Dothan, Alabama, about 20 miles from the Florida state line, and about 70 miles from Blountstown, Florida.

On or about February 26, 1981, the father filed a petition for modification of the custody decree in the Circuit Court of Calhoun County, Florida. The Florida court set a hearing on the petition for May 15, 1981. This petition for modification and a notice of hearing were properly served upon the mother, Mrs. Jenson, in the State of Washington. Soon after she was served with the Florida petition and notice, the mother also filed, on April 21, 1981, a petition for modification in the Superior Court

of Pierce County, Washington. The Washington court entered a temporary restraining order immediately. For the next month or two, there was an exchange of communications between the Florida court and the Washington court, and the Florida hearing was continued. Finally, with the apparent approval of all parties and both states' courts, a hearing was held in Blountstown, Florida, on August 14, 1981, before the same judge who had entered the original 1979 divorce and custody decree.

Both Mr. McDougald (father) and Mrs. Jenson (mother) appeared personally before the court in Florida, with counsel, and testified. At the conclusion of this hearing, the Florida judge ruled from the bench, modified the custody, and awarded primary custody to the mother, with summer visitation and holiday rights to the father. However, before this order was reduced to writing and entered, a motion for rehearing was filed by the father [alleging various irregularities that do not directly affect the issues before this Court] and the Florida court set the matter for further hearing on October 9, 1981. At that hearing, the mother's Florida attorney was permitted to withdraw, and the mother was directed to secure substitute counsel before the next hearing. Meanwhile, the mother's attorney in Washington continued to seek custody of Jerimy through the Washington court. Pursuant to proper notice, another hearing was held in Florida on December 11, 1981. However, the mother was not present at the December 11 hearing, nor was she represented by counsel. As a result of this hearing, a written Order of Modification was entered by the Florida court on January 4, 1982. In this order, the Florida court reversed its earlier *ore tenus* ruling, and awarded primary custody of Jerimy to the father, with summer visitation and holiday rights for the mother.

As previously noted, by apparent agreement of both the Florida court and the Washington court, defendant Jenson's own petition for modification in the Superior Court of Pierce County, Washington had been stayed, pending the outcome of the Florida proceeding. However, Mrs. Jenson had continued to petition the Washington court to assert jurisdiction and award her custody, particularly after the Florida hearing was held on October 9, 1981. Finally, on May 20, 1982, the Washington Superior Court entered an order finding that it had jurisdiction over the matter, and that the Florida court's order "was based on a lesser burden of proof than is required by the State of Washington's stringent requirements for modifying child custody." It subsequently awarded primary custody to Jenson, with visitation rights to McDougald. Thus, the two courts had entered conflicting orders and, thereby, created a legal impasse that still persists.

Jerimy remained in the father's custody pursuant to the Florida order of January 4, 1982 (and, according to the father, with the mother's consent), until the mother and grandfather (defendants Jenson and Ehli) abducted the child from Florida on April 14, 1983, and took Jerimy to Washington. Jerimy has remained exclusively in his mother's custody since then. With this tangled factual background, and with court proceedings continuing in the state courts of Florida and Washington, the matter has now been presented to this court.

## B. The Legal Issues.

(1) *Count I—42 U.S.C. § 1983 action against defendants Verharen and Jenson.*

### (a) *Defendant Verharen*

Defendant Arthur Verharen, as Superior Court Judge of Pierce County, Washington, has filed a motion to dismiss, alleging various grounds in support. This court need only address one of those grounds, lack of personal jurisdiction, to properly dispose of the motion.

In order to establish the jurisdictional nexus required by due process, plaintiff must meet the "minimum contact" requirement as defined in *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945). To do so, plaintiff must indicate that the foreign defendant has "purposefully availed" himself of the privilege of acting in the forum state.

*Hanson v. Denckla,* 357 U.S. 235, 2 L.Ed.2d 1283, 70 S.Ct. 1228 (1958); *World-Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 62 L.Ed.2d 490, 100 S.Ct. 559 (1980).

■ Plaintiff has made no allegations to indicate that Washington state court Judge Verharen conducts or solicits business in Florida, other than the fact that he has engaged in various telephone calls and correspondence with Judge Bailey of the Calhoun County, Florida Circuit Court. Conduct of this nature does not constitute sufficient "minimum contact" with the state of Florida to subject defendant to the jurisdiction of this Court. Nor is there any suggestion that this defendant has purposefully availed himself of the benefits of doing business in Florida, or that this defendant has acted in any other manner that might subject him to this Court's jurisdiction. *International Shoe Co. v. Washington, supra.* Consequently, this Court does not have personal jurisdiction over defendant Verharen, and his motion to dismiss is hereby **GRANTED.**

### (b) *Defendant Jenson*

■ Defendant Jenson has moved for dismissal on the grounds that Count I fails to state a cause of action against her. Plaintiff has brought Count I of this action pursuant to Title 42, *United States Code,* Section 1983. It is well established that in order to establish a Section 1983 cause of action, there must be action taken "under color of state law." Section 1983 does not reach purely private conduct. *District of Columbia v. Carter,* 409 U.S. 418, 34 L.Ed.2d 613, 93 S.Ct. 602 (1973); *Parker v. Graves,* 479 F.2d 335 (5th Cir.1973); *Dykes v. Weinberg,* 564 F.Supp. 536 (M.D.Fla. 1983).

■ The plaintiff contends that Mrs. Jenson's participation in the Washington state court litigation, and her current custody of Jerimy pursuant to the Washington court's order, constitutes action taken under color of state law.

I do not find this argument persuasive. On the contrary, I find that the use of the state's judicial processes by the plaintiff in this instance does not constitute action taken under color of state law. *See, Dahl v. Akin,* 630 F.2d 277 (5th Cir.1980); *Gresham Park Community Org. v. Howell,* 652 F.2d 1227 (5th Cir.1981); *Dykes v. Weinberg, supra.* Accordingly, defendant Jenson's motion to dismiss as to this count is hereby **GRANTED.** Since all of the defendants named in Count I have been dismissed, **Count I is dismissed in its entirety.**

(2) *Count II—Enforcement of a Florida custody decree on the basis of diversity jurisdiction and constitutional "full faith and credit."*

■ Federal courts have traditionally avoided involvement in child custody disputes. *Barber v. Barber,* 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859); *Ex parte Burris,* 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3609 (1975). However, a judgment that is final and, therefore, *res judicata* in the courts of one state ordinarily must be given full faith and credit by all other courts in the United States. *United States Constitution,* Art. IV, § 1; 28 U.S.C. § 1738. Although the United States Supreme Court has determined that it has jurisdiction to decide whether a state judgment involving domestic relations is enforceable [*Williams v. North Carolina,* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *Sutton v. Leib,* 342 U.S. 402, 72 S.Ct. 398, 96 L.Ed. 448 (1952)], the United States Supreme Court has expressly declined ruling on the question of whether full faith and credit principles apply to custody decrees. *Ford v. Ford,* 371 U.S. 187, 192, 83 S.Ct. 273, 276, 9 L.Ed.2d 240 (1962); *Kovacs v. Brewer,* 356 U.S. 604, 607, 78 S.Ct. 963, 965, 2 L.Ed.2d 1008 (1958).

■ To determine whether full faith and credit principles have been violated, it will frequently be necessary for the court to consider whether circumstances have, in fact, changed sufficiently to justify modifi-

cation of the custody decree. Custody decrees are, of course, always subject to modification "in the best interest" of the child. Thus, full faith and credit cannot readily be applied to custody decrees because federal courts may only enforce final state decrees that are no longer subject to modification, and the general rule is that such decrees are not subject to full faith and credit. *Ex parte Burris, supra.; Sistare v. Sistare,* 218 U.S. 1, 16–17, 30 S.Ct. 682, 686, 54 L.Ed. 905 (1940); *Maner v. Maner,* 401 F.2d 616, 618 (5th Cir.1968).

█ Here, the Washington court, in determining not to give full faith and credit to the Florida custody decree, has declared that it is taking the best interest of Jerimy into account. Therefore, it is impossible for this Court to apply full faith and credit principles without readjudicating the underlying custody dispute ... something this Court cannot, and will not, do. Therefore, Count II of the amended complaint is hereby **DISMISSED** for lack of jurisdiction over the subject matter, lack of jurisdiction over the person, and failure to state a claim upon which relief can be granted.

*(3) Count III—"Kidnapping" by Defendants Jenson and Ehli.*

█ It is not unusual for interstate child custody disputes such as this to also include one parent attempting to forcibly obtain custody over a child awarded to the other parent. Every year between 25,000 and 100,000 children of broken marriages are abducted by one of the parents. *Flood v. Braaten,* 727 F.2d 303, 304 (3d Cir.1984). As appalling as this may be, and as emotionally wrenching as these family tragedies are, it is not a matter for this Court to further condemn or condone. Under the circumstances of this case, I find that plaintiff's allegations of "child snatching" do not constitute an actionable tort under Florida law. Perhaps more importantly, such custody matters are not within this Court's diversity jurisdiction because of the "domestic relations exception." *Ex parte Burris,* 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *Hernstadt v. Hernstadt,* 373

F.2d 316, 317–18 (2d Cir.1967). Consequently, Count III fails to state a cognizable cause of action and is hereby **DISMISSED.**

*(4) Count IV—Relief under 28 U.S.C. § 1738A.*

█ The initial inquiry that must be made with regard to plaintiff's reliance upon Title 28, *United States Code,* Section 1738A, is whether Congress intended for federal courts to have jurisdiction to enforce compliance with that provision, in light of the long-established policy of federal court non-involvement. [See part B(2), *supra.*] By enacting this provision, Congress unequivocally and mandatorily imposed federal duties on the states, and, further, granted federal rights to the child custody parties of state court proceedings. Congress has, in my opinion, made this matter a "federal question" within the application of Title 28, *United States Code,* Section 1331. Accordingly, I find that this court does have jurisdiction to consider this case under the particular circumstances and posture that it is now presented. *Flood v. Braaten,* 727 F.2d 303, 310–313 (3d Cir.1984). Such jurisdiction, however, must be limited to a review of the action taken by the respective courts to determine the application of Section 1738A, in the "most restricted" manner. *Cf., Flood v. Braaten, supra.,* at 306.

Although plaintiff seeks, in Count IV of his amended complaint, injunctive, declaratory, and monetary relief, this court will treat Count IV as seeking only declaratory relief regarding the application of Section 1738A to the Florida court's custody modification order of January 4, 1982. Such review is, in this case, this Court's "most restrictive role," and will be sufficient to resolve the controversy. The only issue before the court then, is whether the Florida court exercised proper jurisdiction in making a child custody determination pursuant to Section 1738A(c), and retained that jurisdiction in accordance with Section 1738A(d), thereby invoking the full faith and credit clause of Section 1738A(a).

■ After a thorough and complete evaluation of the testimony presented at the evidentiary hearing held on June 18, 1984, and the pleadings and other matters of record, I find that the Circuit Court of Calhoun County, Florida did have proper jurisdiction of the matter when it rendered the divorce decree and original custody determination on June 1, 1979, pursuant to the requirements of Section 1738A(c), for the following reasons:

(a) Florida was the home state of the child at the date of the commencement of the divorce (and attendant child custody) proceeding;

(b) Florida had been the child's home state within six months prior to the commencement of the action;

(c) The child was then absent from Florida as a result of the removal by his mother; and

(d) Plaintiff McDougald remained a resident of Florida after his child's removal.

■ Defendant Jenson does not contest the Florida court's jurisdiction to enter the original 1979 divorce decree and child custody determination. Once a valid custody determination has been made, as was made by the Florida court in 1979, that court will presumptively retain jurisdiction, pursuant to Section 1738A(d), so long as: (a) it has jurisdiction under the law of the state, and (b) the state remains the residence of the child or a parent or any "contestant."

The first part of the Section 173A(d) test is a matter of state law: the Calhoun County, Florida Circuit Court had, for purposes of the petition for modification filed on February 26, 1981, the hearings of August 14, 1981, October 9, 1981, and December 11, 1981, and the order of January 4, 1982, jurisdiction under the laws of the State of Florida, pursuant to Florida's "Uniform Child Custody Jurisdiction Act," Sections 61.1302–.1348, *Florida Statutes* (1981). It also appears that the state court found, for jurisdictional purposes of Florida law, that Florida was the "residence" of plaintiff McDougald. That finding, however, only applies to the first part of the test.

■ The second part of the Section 1738A test turns upon the term "residence" as used in the federal statute. Factually, the only real issue before the court is whether "such state [Florida] remains the residence" of plaintiff McDougald at the time the Florida court obtained jurisdiction to enter the order of custody modification of January 4, 1982. In my opinion, this statutory residence requirement must have been met either at the time of the filing of the petition for modification, on February 26, 1981, or at the time of the first Florida hearing on August 14, 1981. Continual residence from the time of filing to the time of entry of the court's order is, obviously, not required.

Plaintiff McDougald testified that he left Blountstown, Florida, and moved to an apartment near Dothan, Alabama, in order to be nearer to his place of employment at the Farley Nuclear Plant of Alabama Power Company. Dothan is approximately 20 miles from the Florida line, and McDougald testified that, because he was then working extensive overtime at the plant, he rented the apartment to avoid the added strain of driving back and forth while working the additional overtime. After living in the apartment for about nine months, the plaintiff then moved to a mobile home located across the state line in Georgia, a location that is also approximately 20 miles from Florida. This Georgia location was, apparently, also relatively close to his work at the Farley Nuclear Plant. Altogether, plaintiff resided at these two locations out of the state of Florida for approximately one and one-half years.

During the time that plaintiff was living on a daily basis outside the state of Florida, he testified that: he retained his home in Blountstown, Florida; he retained his Florida driver's license; he remained a Florida registered voter; he retained his church membership in Blountstown; and he regularly returned to Blountstown where his parents lived. He testified that he always intended to return to Blountstown, and considered himself to always be a Florida resident during this period. He is in mid-1984,

and has been for about two years, physically residing in Florida.

■■■■ Defendant maintains that the plaintiff's "residence" for purposes of Section 1738A is where the plaintiff actually lived at the time, and is not the more complex concept of legal domicile or constructive residence, relying upon a law review article by Russell Coombs (a draftsman of Section 1738A). ["Jurisdiction, Recognition and Enforcement," 66 Minn.L. Rev. 711 (June 1982), at page 822, n. 643.] In Florida, "residence" for purposes of divorce and child custody matters under Section 61.021, *Florida Statutes*, is deemed to mean both residence and domicile. *Jefferies v. Jefferies*, 133 So.2d 751 (Fla. 3d D.C. A.1961); *Sheppard v. Sheppard*, 286 So.2d 37 (Fla. 1st D.C.A.1973); *Gillman v. Gillman*, 413 So.2d 412 (Fla. 4th D.C.A.1982). A distinction between "legal residence" and "actual residence" is sometimes made, with "actual residence" having a transitory, temporary character, and "legal residence" used as the equivalent of domicile. 25 Am. Jur.2d, *Domicile*, § 6 (1966). In determining the meaning of "residence," as used in a statute "its context within the statute and the legislative purpose are examined." 25 Am.Jur.2d, *Domicile*, § 4 (1966). When the statutory use of "residence" is to be the equivalent of "domicile," then two elements are necessary: (1) bodily presence in a place, and (2) the intention of remaining in that place; neither alone is sufficient to create a legal residence. *Id.*

■■■■ For purposes of the construction of Section 1738A(d), I am persuaded the context requires that "residence" be deemed the equivalent of "legal residence," at least under these factual circumstances. The Calhoun County Circuit Court obviously found that McDougald met the jurisdictional requirements of Section 61.1308, *Florida Statutes* (1981), and the general requirements of the "Uniform Child Custody Jurisdiction Act," which incorporates, essentially, the same language and intent as Section 1738A. To interpret "residence" as meaning the bodily presence on a given day, as defendant contends, would only

generate further questions of whether one day's presence is sufficient, ... or one week's, or one month's, etc. It would encourage forum shopping for child custody modification, contrary to the obvious intent of Section 1738A. It is apparent to me that neither Alabama nor Georgia would have been an appropriate forum to begin custody modification, and that Florida clearly was the state that best met the Section 1738A criteria for plaintiff McDougald in this situation. In practice, defendant's interpretation would create uncertainty in border areas of the various states where, as here, it is common for workers to move back and forth across states lines for temporary periods. There is no need to create uncertainty when there is now, generally, a high degree of certainty about state residency requirements in these type cases. Applied to plaintiff McDougald, I find that he remained a legal resident of Florida, notwithstanding his temporary physical presence in the states of Alabama and Georgia.

There are also alternative ways to approach this issue, and these result in a similar conclusion:

(1) If the modification petition filed by plaintiff McDougald in Florida on February 26, 1981, is deemed to be the beginning of the "child custody determination" for purposes of Section 1738A(c) [disregarding the 1979 original proceeding], then the Florida court's jurisdictional requirements to enter a child custody decree entitled to full faith and credit in accordance with Section 1738A(a) are established by the following:

(a) The Calhoun County court had jurisdiction under the laws of the state of Florida, pursuant to Florida's "Uniform Child Custody Jurisdiction Act," Sections 61.-1302–.1348, *Florida Statutes* (1981).

(b) As of February 26, 1981, Florida had been Jerimy's home state within six months before the date of the commencement of the proceeding, and Jerimy was absent from Florida because of his removal to live in the state of Washington with his mother, and plaintiff McDougald continued to

"live" in Florida.[1] [See the discussion above regarding residence.] In lieu of Section 1738A(c)(2)(A), then Section 1738A(c)(2)(E) would apply as the residence, for reasons previously discussed.

(c) These requirements meet the dual standard set by Sections 1738A(c)(1) and 1738A(c)(2).

(2) If, for whatever reason, Section 1738A(c)(2)(A) or (E) should not apply, then Section 1738A(c)(2)(D) would apply because the courts in both Florida and Washington had agreed that Florida would proceed to exercise jurisdiction over the custody matter, and the "best interest of the child" dictated that a single court assume jurisdiction.

(3) It is also very significant that plaintiff McDougald, defendant Jenson, and Jerimy all were in Florida for the court's hearing of August 14, 1981, and that all of the parties consented and submitted themselves to the Florida court's jurisdiction, without any apparent objection at that time. Once jurisdiction was established for purposes of Section 1738A, this Court's inquiry is ended, in the absence of fraud or other extraordinary circumstances ... none of which have been alleged by the defendants. Moreover, in determining the "best interest of the child," the Uniform Child Custody Jurisdiction Act sets out two tests to be applied:

1. The child and his parents, or the child and at least one contestant, have a significant connection with this state, and

2. There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

[§ 61.1308(b), *Fla.Stats.* (1981)]

The Florida court had, on August 14, 1981, a factual basis for determining that the "significant connection" and the "substantial evidence" existed in Florida.

(4) Finally, the Uniform Child Custody Jurisdiction Act provides that a court of one state shall not exercise its jurisdiction under the Act if, at the time the petition is filed, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with the Act. § 61.1314, *Fla.Stats.* (1981). In point of time, the Florida modification proceedings were opened on February 26, 1981, while the Washington proceedings were subsequently opened on April 21, 1981. This same provision is incorporated into the federal statute as Section 1738A(g). Undoubtedly, it was in observance of these statutory provisions that the Washington court initially consented to the Florida court's exercise of jurisdiction. The Washington court later concluded that Florida did not apply the same standards as required in the state of Washington, and, therefore, determined that it could adjudicate the matter anew. This was not the test to be applied under Section 1738A(g). I find that the Florida court did exercise jurisdiction "consistently with the provisions" of Section 1738A.[2]

---

1. There obviously may be a significant difference between the place where one lives and the place of one's residence. In this regard, the Coombs article in the Minnesota Law Review [see page 16, *supra.*] correctly notes that the question of where a person actually lives is a simple determination. It may change weekly, or more frequently, for many segments of the working population. Section 1738A interchanges the two concepts of "living" and "residing" in a manner that is not entirely consistent. I am of the opinion that the entire section must be construed so as to avoid any internal inconsistencies and to give effect to what I perceive to have been the intent of the Congress. Under the facts of this case, where McDougald continued to retain a home in Florida, etc., he may properly be characterized as "living" there.

2. Defendant Jenson also raises the issue of exhaustion of state court remedies, noting that neither *Flood v. Braaten,* 727 F.2d 303, 312 n. 28, (3d Cir.1984), nor *Bennett v. Bennett,* 682 F.2d 1039, 1044 (D.C.Cir.1982), address exhaustion. Defendant's argument is applicable to the full faith and credit aspect [see part (B)(2), above], but it has questionable validity under Section 1738A. If Section 1738A has created both federal rights and duties, then it may be the basis for a resolution in federal courts. I find no requirement, either expressed or implied, that the parties exhaust any available state remedies through an appeal to the highest available state court when, as here, the custody dispute has already led to clearly conflicting orders entered by the two states, and it is unlikely that appeals in both (or either of the) states would

### C. Conclusion.

I conclude, therefore, that this Court has jurisdiction to consider and declare the rights of the parties under Title 28, *United States Code,* Section 1738A, as that statute applies to the custody modification order entered by the Florida court on January 4, 1982. 28 U.S.C. § 2201; Rule 57, F.R. Civ.P. I further conclude that there is no genuine issue as to any material fact, and that this is a matter that the Court can decide as a matter of law by summary judgment. Rule 56, F.R.Civ.P. The Court declares that the "Order of Modification" entered by the Circuit Court of Calhoun County, Florida, on January 4, 1982, was made consistently with the provisions of Title 28, *United States Code,* Section 1738A, and is entitled to enforcement according to its terms. Finally, the plaintiff's motion for preliminary injunction is hereby **DENIED,** since this order is intended to be dispositive of the case. For the reasons set forth in this opinion, the plaintiff's motion for summary judgment is hereby **GRANTED** in part, and the Clerk is directed to enter judgment in accordance herewith in favor of the plaintiff, but without taxation of costs or attorneys' fees.

result in a resolution that would be accepted as final in both states. Finally, as the *Flood* court noted, it is unreasonable to expect these cases to be routinely presented to the United States Supreme Court for a final decision.