DONALD R. ADAMS, Appellant, *v.*
CYNTHIA ADAMS, Respondent.

No. 21635

November 5, 1991

820 P.2d 752

*Rodney E. Sumpter,* Reno, for Appellant.

*Dean R. Heidrich,* Reno, for Respondent.

## OPINION

*Per Curiam:*

### THE FACTS

Donald and Cynthia Adams were divorced in 1985. The decree of divorce, filed April 19, 1985, outlined a physical custody agreement regarding the parties' three minor children. This agreement provided in relevant part as follows:

> [C]ustody of the minor children of the parties is hereby awarded to [Cynthia Adams], subject to [Donald Adams'] rights of reasonable visitation; . . . [Donald Adams] shall have extended visitation with the minor children during the summer months (June through August) each and every year beginning in June, 1986 . . . .

After the divorce, Cynthia and the children lived with Cynthia's male friend, Thad Giles. After allegations surfaced that Thad Giles sexually assaulted the children, the district court held a hearing and, by order dated February 1, 1988, modified the existent custody arrangement. Donald Adams was awarded physical custody of the children with weekend visitation rights awarded to Cynthia Adams.

Eventually, another hearing was conducted on October 18, 1988. On December 27, 1988, the district court further modified the physical custody arrangement by an order that provided in relevant part:

> IT IS HEREBY ORDERED that the existing custody is modified as follows:
>
> 1. On the fourth weekend of each month, [Cynthia Adams] shall have forty-eight (48) hours unsupervised visitation with the minor children in Reno and [Donald Adams] is hereby ordered to provide transportation for the minor children.
>
> . . . .
>
> 4. [Cynthia Adams] is not to allow the children to be in

the presence of Thad Giles during any visitation time until further ordered by this Court.

On January 26, 1989—approximately one month after the District Court of Nevada issued its December 27, 1988 visitation order—Donald Adams, who now resides with the three children in northern California, filed a "Complaint to Establish Foreign Judgment" in the Superior Court of California. After receiving the complaint, the California superior court ordered a suspension of Cynthia Adams' visitation rights pending further hearings. Donald Adams also filed a "Motion for Finding of Inconvenient Forum" in the District Court of Nevada. This motion asked the Nevada district court to relinquish its jurisdiction in this matter to the California court.

On July 5, 1990, the Nevada district court judge—in apparent concert with the California superior court judge—decided Nevada should retain its jurisdiction over the custody and welfare of the subject minor children. The day after the district court rendered this decision, Cynthia Adams filed a motion for reinstatement of the December 27, 1988 order which had granted her unsupervised monthly visitation with the children for forty-eight hours during the last weekend of each month. Donald Adams filed an opposition.

The matter was submitted to the district court judge. In a terse order dated September 12, 1990, Cynthia Adams' motion for reinstatement was granted. This appeal followed.

### BACKGROUND OF THE LAW

The full faith and credit doctrine requires each state to give effect to the judicial proceedings of other states. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738 (1988). However, custody orders hold an anomalous status under this doctrine. Some courts have reasoned that since custody orders may be modified to suit the best interests of a child, they are not always sufficiently final to trigger full faith and credit requirements. *See* Hooks v. Hooks, 771 F.2d 935, 948 (6th Cir. 1985); McDougald v. Jenson, 596 F.Supp. 680, 684-685 (N.D.Fla. 1984), *aff'd,* 786 F.2d 1465 (11th Cir. 1986), *cert. denied,* 479 U.S. 860 (1986). The United States Supreme Court has expressly declined opportunities to settle this question. *See* Ford v. Ford, 371 U.S. 187, 192 (1962). Further, the United States Supreme Court has said:

Even if custody orders were subject to full faith and credit requirements, the Full Faith and Credit Clause obliges States only to accord the same force to judgments as would be accorded by the courts of the State in which the judgment

was entered. Because courts entering custody orders generally retain the power to modify them, courts in other States were no less entitled to change the terms of custody according to their own views of the child's best interest.

Thompson v. Thompson, 484 U.S. 174, 180 (1988).

This anomaly to the full faith and credit doctrine has been problematic. As of 1980, an estimated 25,000 to 100,000 children have been abducted by parents who—in order to obtain a more favorable child custody award—took the children to another forum state to relitigate the child custody issues. *Id.* at 181. This, in turn, lead to impasses between two state forums where different spouses were awarded sole physical custody of a minor child.[1]

### A.   Uniform Child Custody Jurisdiction Act.

The National Conference of Commissioners on Uniform State Laws attempted to deal with this problem by promulgating the Uniform Child Custody Jurisdiction Act (UCCJA). *See* Unif. Child Custody Juris. Act §§ 1–28, 9 U.L.A. 116-170 (1968). Some of the stated purposes of this act are to avoid jurisdictional competition and deter abductions of children by enforcement of preexisting custody decrees from other states. *See* Unif. Child Custody Juris. Act § 1(a)(1),(5), 9 U.L.A. 123-124 (1968). Nevada has adopted the UCCJA and adheres to the stated purposes and policies underlying the act. *See* NRS 125A.020. To facilitate these policies, our UCCJA establishes four grounds which endow our state courts with jurisdiction in these cases. *See* NRS 125A.050(1). California has likewise adopted the UCCJA and the four jurisdictional grounds set forth therein. California accepted emergency jurisdiction in the present case because of Donald Adams' allegation that the subject children were being abused by Thad Giles. *See* Cal. Unif. Child Custody Juris. Act, Cal. Civ. Code § 5152(1)(c)(ii) (West 1983).

Not only are jurisdictional standards tightened under the UCCJA, but the act also establishes stringent standards for the modification of a custody decree of another state. In order to prevent forum shopping, California's Uniform Child Custody Jurisdiction Act provides:

---

[1]For example, in *Thompson,* a mother petitioned the Los Angeles superior court to dissolve her marriage. The California court awarded the mother sole physical custody of her child pending the submission of a child custody report. The mother moved to Louisiana with the child. Three months later, the mother filed a petition in the Louisiana state court for enforcement of the California custody decree. The Louisiana court granted the mother's petition. Two months later, however, the California court, after receiving the child custody evaluation, awarded sole physical custody of the subject minor child to the father. *Thompson,* 484 U.S. at 177-178.

1. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

*See* Cal. Civ. Code § 5163 (West 1983); *see also* NRS 125A.180(a). Further, the UCCJA provisions in Nevada and California also mandate the recognition of foreign decrees under specified circumstances. *See* NRS 125A.170; *see also* Cal. Civ. Code § 5162 (West 1983).

However, the UCCJA is not a panacea. Some states have not adopted the act; others have adopted the act with significant modifications. Also, the UCCJA does not address situations where two state courts construe their respective provisions of the UCCJA differently. In cases where two state constructions of the act result in substantially conflicting custody orders, the United States Supreme Court has abstained from determining which decree is valid to avoid interpretations of state law. *See* Webb v. Webb, 451 U.S. 493, 497 (1981).

## B. Parental Kidnapping Prevention Act.

In an apparent attempt to resolve any remaining jurisdictional problems in this area, Congress enacted the Parental Kidnapping Prevention Act. (PKPA). *See* 28 U.S.C. § 1738A (1988). Essentially, the PKPA requires each state to afford full faith and credit to another state's preexisting custody decree if the preexisting decree was made consistently with the provisions of the act.

The PKPA does not afford litigants a private cause of action to enforce state compliance with the act in the federal courts. *Thompson,* 484 U.S. at 186-187. However, the act does contain provisions that attempt to solve the problem of two state courts asserting concurrent jurisdiction in order to modify an original custody decree. First, the PKPA bestows continuing jurisdiction over the matter upon the state court which issued a prior child custody decree so long as that state maintains jurisdiction under its state law and is the residence of a parent or the child. *See* 28 U.S.C. § 1738A(d) (1988). Further, a second state court cannot exercise concurrent jurisdiction over the matter if the first state retains and exercises jurisdiction as provided by the PKPA. *See* 28 U.S.C. § 1738A(g) (1988). Finally, a second state is only allowed to modify a preexisting custody award entered by the first state if the first state no longer has jurisdiction or refuses to

exercise continuing jurisdiction. *See* 28 U.S.C. § 1738A(f) (1988).

Thus, the central issue evolves: Should Nevada recognize—under either the full faith and credit doctrine, the UCCJA or the PKPA—the California superior court order that vacated Cynthia Adams' visitation privileges until further hearing? We conclude it should not.

## APPLICATION OF THE LAW

First, we need not afford full faith and credit to the California superior court's attempt to modify the December 27, 1988 order that issued from the Nevada district court. As previously mentioned, a state court is not allowed to modify a preexisting child custody order under the PKPA unless the court which rendered the preexisting order no longer has jurisdiction over the matter or has declined to exercise such jurisdiction.

Since Nevada continues to exercise its jurisdiction over this case, Nevada *need not* afford full faith and credit to the California order pursuant to the requisites of the PKPA. *See* 28 U.S.C. § 1738A(a) (1988); 28 U.S.C. § 1738A(d) (1988); 28 U.S.C. § 1738A(f) (1988); 28 U.S.C. § 1738A(g) (1988). Further, we conclude Nevada *should not* afford full faith and credit to the January 27, 1989, California order. It is apparent from the facts of this case that Donald Adams was indulging in the kind of "forum shopping" that the PKPA was enacted to prevent when he attempted to remove this matter from the courts of Nevada *one month after the Nevada district court issued its custody/visitation order.* Had Donald Adams felt that new facts and circumstances warranted a modification of the December 27, 1988 custody/visitation order, he could have requested a modification in Nevada.

Likewise, we conclude Nevada need not afford recognition to the California superior court order under Nevada's UCCJA. Specifically, NRS 125A.170 provides:

> The courts of this state shall recognize and enforce an initial or modifying decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with the Uniform Child Custody Jurisdiction Act, or the Indian Child Welfare Act of 1978 (25 U.S.C. §§ 1901 et seq.), or which was made under factual circumstances meeting the jurisdictional standards of those acts, so long as this decree has not been modified in accord-

ance with jurisdictional standards substantially similar to those of those acts.

Again, however, California's UCCJA precludes the California courts from accepting jurisdiction in these cases if the court of another state has made a custody decree, unless the other state court has lost jurisdiction over the matter under the UCCJA or refuses to exercise its jurisdiction. *See* Cal. Civ. Code § 5152(1)(d) (West 1983); Cal. Civ. Code § 5163 (West 1983). Nevada had neither lost nor refused to exercise its jurisdiction over the child custody issues presented herein. the California court acted appropriately, pursuant to Cal. Civ. Code § 5152(1)(c)(ii) (West 1983), when it assumed emergency jurisdiction based on Mr. Adams' child abuse claims. However, the Nevada judge likewise responded properly by personally conferring with the California judge, pursuant to NRS 125A.070(4),[2] to resolve the jurisdictional issue. Accordingly, it was determined that Nevada would retain jurisdiction.

Therefore, NRS 125A.170 does not require Nevada's recognition of the January 27, 1989 California superior court order that suspended Cynthia Adams' visitation privileges under either the PKPA or Nevada's UCCJA. Consequently, the California superior court order of January 27, 1989, had no effect upon the preexisting custody order that issued a month earlier from the Nevada district court on December 27, 1988. Accordingly, the district court's "reinstatement" of the December 27, 1988 Nevada custody order, albeit a proper precautionary measure, was actually redundant and unnecessary. We conclude that the December 27, 1988 custody order has remained in effect in this jurisdiction since its inception and continues to remain in effect. We therefore affirm the decision of the district court.

---

[2]NRS 125A.070(4) provides:

> Before determining whether to decline or retain jurisdiction *the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court* and that a forum will be available to the parties. (Emphasis added.)