David S. SMITH, Plaintiff, Appellee
and Cross–Appellant,

v.

Deborah L. SMITH, n/k/a Deborah L.
Thomas, Defendant, Appellant
and Cross–Appellee.

No. 940196.

Supreme Court of North Dakota.

June 27, 1995.

Tom P. Slorby, Minot, for plaintiff, appellee and cross-appellant.

Robert S. Rau, of Bosard, McCutcheon & Rau, Ltd., Minot, for defendant, appellant and cross-appellee.

SANDSTROM, Justice.

Deborah Smith appealed from a district court judgment deciding issues incident to her divorce from David Smith, who cross-appealed from the judgment. We affirm, holding the appeal should not be dismissed because of benefits accepted under the judgment; the North Dakota trial court properly had jurisdiction over the issues it decided; and unsupervised visitation, spousal support, and allocation of other costs were supported by the record.

I

On May 3, 1993, a California court entered a decree dissolving David and Deborah Smith's marriage. On May 2, 1994, the North Dakota district court entered a judgment giving primary physical custody of the parties' children to their mother, providing reasonable visitation between the children and their father, dividing the marital property, awarding Deborah Smith spousal support of $100 per month for eighteen months, awarding child support of $497 per month, and requiring the parties to pay their own attorney fees. Deborah Smith appealed from the judgment, objecting to the court's award of unsupervised visitation between the children and their father, requesting extended and increased spousal support, requesting David Smith be required to pay therapy charges for the children, and objecting to the court's failure to award her attorney fees. David Smith cross-appealed, asserting the trial court should not have awarded any spousal support.

This Court has jurisdiction under Article VI, § 6, N.D. Const., and N.D.C.C. § 28-27-01. The appeal and cross-appeal are timely under Rule 4(a), N.D.R.App.P.

After the divorce Deborah Smith resumed use of her maiden name, Thomas. In this opinion we refer to David Smith as Smith and to Deborah Smith by her maiden name, Thomas.

II

Smith filed a motion requesting this Court to dismiss Thomas' appeal, alleging Thomas accepted spousal support, thus waiving the right to appeal from the judgment by accepting benefits under it.

As a general rule, a party to a divorce action who accepts substantial benefits under the judgment waives the right to appeal from the judgment. *Brodersen v. Brodersen*, 374 N.W.2d 76, 77 (N.D.1985). We have sharply limited the rule, however, to promote a strong policy of reaching the merits of an appeal. *Spooner v. Spooner*, 471 N.W.2d 487, 489 (N.D.1991). To waive the right of appeal, the party must unconditionally, voluntarily, and consciously accept a substantial benefit under the judgment. *Brodersen* at 77. A party does not waive the right to appeal from a divorce judgment, unless the party accepts benefits under circumstances clearly indicating an intention to be bound by the judgment. *See Sanford v. Sanford*, 295 N.W.2d 139, 142 (N.D.1980). The party moving to dismiss the appeal must clearly establish waiver of the right to appeal by the other party. *Brodersen* at 77.

Thomas is currently living in California with the parties' two minor children in her care. Smith does not dispute that Thomas has considerable debt and living expenses. Her accepting monthly spousal support payments of $100 does not, under these circumstances, constitute receipt of a substantial benefit under the judgment showing an intention by her to be bound by it. Further, Thomas' acceptance of the spousal support is not inconsistent with her claim on appeal she should have been awarded more support. *See Sanford* at 142 (acceptance of part of a cash property settlement is not inconsistent

with appellant's claim the settlement award should have been larger). We conclude Smith has failed to demonstrate Thomas knowingly and voluntarily accepted substantial benefits under circumstances clearly indicating her intent to be bound by the judgment. Therefore, Thomas did not waive her right to appeal from the judgment.

### III

The parties do not agree whether North Dakota or California court's have jurisdiction.

Smith and Thomas were married in 1984 in California. They soon moved to Minot where their two children, Heather and Michael, were born. Smith and Thomas separated in May 1992, and Thomas moved back to California with the children. She petitioned in California for a legal separation on July 15, 1992. Smith filed for a divorce in North Dakota on August 3, 1992. Smith contested the California court's jurisdiction and Thomas contested the jurisdiction of the North Dakota court. Proceedings were held in both states. The trial judges of the two states conferred by telephone about the jurisdictional issues.[1] They agreed California would retain jurisdiction to dissolve the marriage, but North Dakota was the appropriate forum to decide custody, support, and property division.

To carry out this agreement, the Superior Court of California entered a March 29, 1993 order, retaining jurisdiction "over the marital res" but vacating all related California orders and deferring jurisdiction to North Dakota for "issues requiring in personam jurisdiction." On May 3, 1993 the California court entered a decree divorcing Smith and Thomas. Our trial court recognized the California divorce decree, and, in its May 2, 1994 judgment, resolved the incidental issues of property division, custody, and support.

### A

Thomas objects to the telephone communication between the judges. She claims their ex parte discussion was improper.

N.D.C.C. § 14–14–07(4) of the Uniform Child Custody Jurisdiction Act, clearly authorizes courts in different states to communicate before deciding which court should assume jurisdiction:

> "4. Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties."

Discussions between judges under this provision promotes cooperation between the states and can help to avoid re-litigation of similar issues. *In re Marriage of Elblkasy,* 241 Ill.App.3d 662, 182 Ill.Dec. 715, 717, 610 N.E.2d 139, 141 (1993). *See also Adams v. Adams,* 107 Nev. 790, 820 P.2d 752, 756 (1991). The parties must be informed of the content of the conversation to protect their rights to fair and impartial decision making. *See Burkhalter v. Burkhalter,* 634 So.2d 761 (Fla.App. 1 Dist.1994). Here, the judges' communication was recorded and transcribed, giving the parties an opportunity to review it and present objections. Thomas has not persuaded us the judges' communication was either unauthorized or unfair to the parties.

### B

Thomas also argues California, not North Dakota, has jurisdiction under the provisions of the Uniform Child Custody Jurisdiction Act, and specifically N.D.C.C. § 14–14–03. In *Dennis v. Dennis,* 387 N.W.2d 234, 235 (N.D.1986), this Court explained the two-prong inquiry a court must make in deciding whether to assume jurisdiction in a case involving child custody with interstate implications:

> "In essence, Chapter 14–14, N.D.C.C., requires that a court make a two-pronged inquiry to determine whether it should entertain a child-custody proceeding having interstate implications: it must first determine whether it has jurisdiction under Sec-

---

1. The District Judge Jon R. Kerian communicated with the California judge and resolved the jurisdictional issues. The case was later tried on its merits by District Judge Gerald H. Rustad.

tion 14–14–03 [U.C.C.J.A. § 3] and, if so, the court must then determine whether it is appropriate to *exercise* jurisdiction under Section 14–14–07 [U.C.C.J.A. § 7]. . . .

"It is well settled that the decision whether to decline to exercise jurisdiction on inconvenient-forum grounds lies entirely within the trial court's discretion, and its decision will be reversed on appeal only for an abuse of discretion." (Emphasis in original.)

■ North Dakota's jurisdictional basis in this case is found under N.D.C.C. § 14–14–03:

"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:

"a. This state (1) is the home state of the child at the time of commencement of the proceeding, or (2) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"b. It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

\*     \*     \*     \*     \*     \*

"d. (1) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision a, b, or c, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (2) it is in the best interest of the child that this court assume jurisdiction."

The term "home state" is the state where the child has lived with the parents for at least six consecutive months immediately preceding the time involved. N.D.C.C. § 14–14–02(5). Heather and Michael were born in North Dakota and resided here their entire lives until Thomas took them to California in May 1992. Smith began these proceedings in August 1992. Consequently, the North Dakota district court had jurisdiction under N.D.C.C. § 14–14–03(1)(a), because this was the children's home state within six months before the proceedings began, the children's father continues to live here, and the children are absent from this state only because they were removed by their mother.

The court also has jurisdiction under N.D.C.C. § 14–14–03(1)(b), because the children, having lived in North Dakota most of their lives with both parents, have significant connections here. The trial court appropriately found available here substantial evidence about the children's present and future care, protection, training, and personal relationships.

The court also has jurisdiction under § 14–14–03(1)(d), because California declined jurisdiction to decide the issues related to the marriage dissolution and deferred exercise of jurisdiction to North Dakota as the more appropriate forum. After conferring with the California court, our trial court found it is in the best interests of the children for North Dakota to assume jurisdiction.

Accordingly, we conclude the trial court had jurisdiction in this case under Article VI, § 8, N.D. Const., and N.D.C.C. §§ 27–05–06(2), 14–14–03(1), 14–05–22, and 14–05–24.

### IV

The trial court gave primary custody of the children to Thomas and provided reasonable visitation between Smith and the children. Thomas objects to Smith having unsupervised visitation with the children. She asserts Smith physically abused the children and should only be allowed supervised visitation because he has not shown, under N.D.C.C. § 14–05–22(3), that unsupervised visitation would not endanger the children.

■ The purpose of visitation is to promote the best interests of the child and, ordinarily, visitation between a child and a non-custodial parent is viewed as being a right of the child which is in the best interests of the child. *Dschaak v. Dschaak,* 479 N.W.2d 484, 487 (N.D.1992). When the non-custodial parent has committed domestic violence, our current law, under N.D.C.C. § 14–05–22(3), directs the court to allow only supervised visitation unless the abusive parent demonstrates unsupervised visitation will not endanger the child:

> "3. If the court finds that a parent has perpetrated domestic violence and that parent does not have custody, the court shall allow only supervised child visitation with that parent unless there is a showing by clear and convincing evidence that unsupervised visitation would not endanger the child's physical or emotional health." [2]

Smith conceded he on one occasion inappropriately struck Heather on the thigh bruising her and also inappropriately on one occasion "thumped" Michael on the chest. The trial court found Smith committed domestic violence and then applied N.D.C.C. § 14–05–22(3), to determine if unsupervised visitation should be allowed. The court made the following detailed findings on this issue:

> "First, I find that the domestic abuse testified of was not of great or significant degree.

> "Secondly, [Smith] has openly acknowledged his error and openly engaged in significant therapy and counseling to deal with anger management, completing the prescribed therapy and meeting the goals.

> "Third, the testimony of social workers indicated that the primary cause of the abusive behavior had to do with stresses which existed in [Smith's] life which no longer exist.

> "Fourth, the therapists indicate that any recurrence of abusive behavior is very unlikely.

> "Fifth, character references testified as to interaction between the children and [Smith] and described appropriate adult behavior on the part of [Smith].

> "Sixth, [Thomas] herself, after the abusive behavior, requested [Smith] to return to the family home, indicating that her view of the abuse has become enhanced since the commencement of the legal proceedings between the parties.

> "These combined findings constitute clear and convincing evidence that unsupervised visitation would not endanger the children's physical or emotional health and that visitation would be in the best interests of the children."

■ Although Smith's striking of the children was clearly wrong, the evidence supports the trial court's finding the abuse was "not of great or significant degree." Further, Smith, recognizing his actions were wrong and harmful, sought treatment to deal with his anger and abusive behavior.[3] Bryce Veazey, the family advocacy manager at the Minot Air Force Base, testified Smith successfully completed counseling and treatment for his abusive actions. He also testified Smith has a good prognosis for being able to deal in an appropriate manner with the children if, in the future, the children are in his custody or are visiting him.

2. The clear and convincing evidence burden was added by amendment in 1993. S.L.1993, Ch. 144, § 1. That amendment became effective August 1, 1993. Smith claims the court erred in applying the amendment to this case, because the effective date of the amendment occurred after this action was filed. We need not resolve the issue, because the trial court found Smith met the burden imposed by the amendment of proving by clear and convincing evidence unsupervised visitations would not present a danger to the children. Consequently, the court's application of the provision, if error, was harmless.

3. Smith's recognition he needed professional help to deal with his abusive behavior distinguishes this case from the circumstances of *Heck v. Reed,* 529 N.W.2d 155 (N.D.1995).

N.D.C.C. § 14–09–06.2(1)(j), creates a rebuttable presumption the parent who perpetrates domestic violence cannot be awarded custody, and the presumption can be overcome only by clear and convincing evidence the best interest of the child requires custody be awarded to the parent having committed the domestic violence. Whether the abusive parent has sought treatment is relevant to deciding if future domestic violence is likely to occur.

The trial court's decision on visitation is treated as a finding of fact which will not be reversed unless clearly erroneous. *Haus v. Haus,* 479 N.W.2d 474, 476 (N.D.1992). A finding is clearly erroneous only if the reviewing court, on the entire record, is left with a definite and firm conviction a mistake has been made. *Brandt v. Brandt,* 523 N.W.2d 264, 265 (N.D.1994). We conclude the trial court's findings on this issue are supported by the record and are not clearly erroneous. The trial court did not err in awarding Smith unsupervised visitation with Heather and Michael.

## V

The trial court awarded Thomas spousal support of $100 per month for eighteen months. Thomas asserts this was an inadequate "token award" and it should be "extended and increased." There are two types of spousal support. Permanent spousal support is appropriate to provide traditional maintenance for a spouse who is incapable of rehabilitation. *van Oosting v. van Oosting,* 521 N.W.2d 93, 100 (N.D.1994). Rehabilitative support is appropriate to restore an economically disadvantaged spouse to independent status or to equalize the burden of divorce. *Lill v. Lill,* 520 N.W.2d 855 (N.D. 1994). A trial court's spousal support decisions are treated as findings of fact which will not be set aside on appeal unless clearly erroneous. *LaVoi v. LaVoi,* 505 N.W.2d 384, 386 (N.D.1993). The complaining party bears the burden of demonstrating on appeal a finding of fact is clearly erroneous. *Sateren v. Sateren,* 488 N.W.2d 631 (N.D.1992).

The record contains very little evidence about Thomas' economic circumstances, and is especially lacking about her work history or her intentions about future rehabilitation or education. There is evidence Thomas has one year of college courses and a degree at a technical school. There is also evidence Thomas, at the time of the hearing, was working and also receiving supplemental disability payments for a shoulder injury. The court found she was receiving $194 per week in disability payments and also found there was "some degree of equality in earning potential" between Smith and Thomas. There is little evidence showing the probable duration of Thomas' disability or her plans to obtain rehabilitation of the injury or additional education. Smiths' net income is about $1,733 per month.

The court found "the nine-year marriage has resulted in some disadvantage to [Thomas'] current earning capacity" and Thomas "is in need of some additional assistance to accommodate her transition to single life." Although both parties assert the spousal support award is clearly erroneous, neither has met the burden of demonstrating that claim. What little evidence was introduced on this issue supports the court's conclusion Thomas was somewhat disadvantaged by the divorce and entitled to some support to equalize the burden of the divorce. We conclude the trial court's spousal support award is not clearly erroneous.

## VI

Thomas asserts the trial court erred in not requiring Smith to pay for daughter Heather's therapy or counseling sessions in California. Thomas testified she sought therapy sessions for Heather because of Heather's "defiantness," "hyperactivity" and "attention deficit disorder." The court ordered Smith to maintain medical insurance for the children and to pay one-half of the medical expenses not paid by insurance, but the court expressly stated it would not require Smith to pay for "therapy for emotional issues." We conclude the court's refusal to require Smith to pay for the therapy sessions Thomas sought for Heather is not clearly erroneous.

## VII

Thomas asserts the trial court erred in refusing to award her attorney fees and court costs under N.D.C.C. § 14–05–22(5):

"5. In any custody or visitation proceeding in which a parent is found to have perpetrated domestic violence, all court costs, attorneys' fees, evaluation fees, and expert witness fees must be paid by the perpetrator of the domestic violence

unless those costs would place an undue financial hardship on that parent."[4]

The trial court specifically found requiring either party in this case to pay attorney fees for the other would cause an undue hardship on the obligated party, and the court ordered each party to pay for his or her own attorney fees. The trial court's decisions regarding costs and attorney fees in a divorce action will not be disturbed unless it is affirmatively established the trial court abused its discretion. *Simons v. Gisvold*, 519 N.W.2d 585, 588 (N.D.1994). There is evidence both parties have debt and are struggling financially. We conclude the trial court's finding it would be an undue financial hardship to require Smith to pay for Thomas' attorney fees is not clearly erroneous. Therefore, the trial court's refusal to award Thomas attorney fees and costs in this case did not constitute an abuse of discretion.

### VIII

The judgment of the district court is affirmed.

VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.

4.  This provision was enacted in 1993. S.L.1993, Ch. 144, § 1. It became effective August 1, 1993, after this action was filed, so Smith claims the court should not have applied it. We need not reach this issue, because the court did not impose costs or fees under the provision. Therefore, the court's application of the provision, if error, was harmless.