Keith M. RUSTAND, Plaintiff
and Appellee,

v.

Elizabeth L. RUSTAND, Defendant
and Appellant.

Civ. No. 10913.

Supreme Court of North Dakota.

Jan. 7, 1986.

Patrick A. Conmy, argued, of Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for defendant and appellant.

Paul G. Kloster, argued, of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee.

GIERKE, Justice.

Elizabeth L. Rustand Strothman appeals from that portion of an amended judgment which granted Keith M. Rustand's motion for modification of a divorce judgment. The motion for modification was granted on January 28, 1985, by the District Court of Stark County. We reverse and remand with instructions.

Elizabeth L. Rustand Strothman (Elizabeth) and Keith M. Rustand (Keith) were married February 14, 1969. Two children were born of this marriage, both of whom were minors and in Elizabeth's custody at the time of the action.

On August 19, 1981, Elizabeth and Keith were divorced. Prior to the divorce the parties had arrived at an apparently mutually satisfactory outline of the property distribution, custody, and spousal support. Elizabeth and Keith presented this outline to an attorney who then prepared an agreement based on the outline. The agreement was executed by the parties on August 18, 1981, and subsequently incorporated into the divorce judgment.

On June 29, 1984, Elizabeth remarried. Following Elizabeth's remarriage, Keith sought and was granted a modification of the support and maintenance portions of the divorce judgment. He requested termination of the $2,500 monthly payment to Elizabeth which had been initially granted by the divorce judgment. His ground for modification was primarily the undisputed fact that Elizabeth had remarried. The court granted the modification and found Keith's continuing obligation to be $300 per month per child in addition to the obligations under the original judgment relating to health care and college education.

The primary issue on appeal is whether or not the award to Elizabeth of $2,500 per month "alimony, support and maintenance" should terminate because of her remarriage.

■ The use of the word "alimony", as we have said on several occasions, involves a confusing array of connotations. *Seablom v. Seablom*, 348 N.W.2d 920, 921, 924 (N.D.1984); *Lipp v. Lipp*, 355 N.W.2d 817, 820 (N.D.1984). "Alimony" has come to be a generic term encompassing several award concepts. The most obvious of these concepts are permanent spousal support, rehabilitative spousal support, property distribution, or child support. *Lipp, supra* 820; *Coulter v. Coulter*, 328 N.W.2d 232, 241 (N.D.1981); *Urlaub v. Urlaub*, 325 N.W.2d 234, 236 (N.D.1982); *Rust v. Rust*, 321 N.W.2d 504 (N.D.1982).

■ Each type of award serves a different function and is triggered or terminated by widely divergent needs and events. For example, permanent spousal support may be awarded in an attempt to provide maintenance for a spouse incapable of rehabilitation. *Seablom, supra* 924. *See Gooselaw v. Gooselaw*, 320 N.W.2d 490 (N.D. 1982).

■ Rehabilitative spousal support, on the other hand, is awarded to provide an opportunity for a disadvantaged spouse to seek education, training, or experience that will enable this spouse to become self-supporting. O'Kelly, *Three Concepts of Alimony in North Dakota*, 1 UND Faculty Journal 69, 75 (1982); *see Smith v. Smith*, 326 N.W.2d 697 (N.D.1981). When modification of rehabilitative spousal support is sought there are two appropriate grounds. The first of these grounds is an abandonment by the disadvantaged spouse of a good faith effort to become economically rehabilitated. *O'Kelly, supra* 77; *see, Bullock v. Bullock*, 354 N.W.2d 904 (N.D. 1984). The second ground is the accomplishment of the rehabilitative goal. On the other hand, permanent spousal support will terminate upon remarriage absent extraordinary circumstances. *Nugent v. Nugent*, 152 N.W.2d 323 (N.D.1967). These awards—permanent spousal support and rehabilitative spousal support—are dichotomous. Certainly a case may arise where it would be appropriate to grant both types of support to a disadvantaged spouse, but the two awards will be treated differently. *See Bauer v. Bauer*, 356 N.W.2d 897 (N.D. 1984).

The inherent ambiguities in the term "alimony" and the consequent confusion caused by continued use of the term are apparent in the instant case. The pre-di-

vorce agreement which was later incorporated into the divorce judgment granted $2,500 per month "[f]or the support and maintenance of Defendant [Elizabeth], and in full discharge of her right to alimony, support and maintenance ...". Elizabeth, who was not independently represented by counsel when the agreement was drawn, now asserts that the $2,500 per month award, although labeled alimony, was in reality at least partially property settlement, partially child support, and partially spousal support.[1]

Elizabeth's claim that a portion of the $2,500 per month was meant to offset an otherwise inequitable property distribution may have merit. Elizabeth received the marital home, two vehicles, her personal belongings, and a part of the household goods. Keith received all of the income-producing business assets, one vehicle, one motor home, his personal belongings, and a part of the household goods. Elizabeth now alleges that Keith received property valued at approximately $1,000,000. Keith places a value on the property he received of approximately $547,000. Contrarily, Keith alleges that Elizabeth received approximately $250,000 in property at the time of the divorce. Elizabeth places the value of the property she received at the time of the divorce to be approximately $140,000. The record does not establish what the value of the property was objectively determined to be at the time of the divorce, nor would the record normally do so in a default divorce.

The language of the pre-divorce agreement supports Elizabeth's contention that a portion of the monthly payment was meant

as property distribution. Part VIII of the pre-divorce agreement, which was incorporated into the judgment, reads as follows:

"VIII.

"For the support and maintenance of Defendant, and in full discharge of her right to alimony, support and maintenance, Plaintiff shall pay to Defendant the sum of Two Thousand Five Hundred Dollars ($2,500.00) per month commencing upon the first day of the month next following the date hereof. Plaintiff shall be obligated to pay all necessary reasonable medical, dental, orthodontic, and optometric expenses incurred on behalf of Defendant, *until such time as Defendant remarries.* [Emphasis added.]

"Defendant's right and claim to said alimony shall be limited by and subject to the condition that Plaintiff's obligation shall, in all things, *terminate upon Defendant's death.* This sum shall be adjusted each year based upon the prior year's percentage change in the Consumer Price Index as published by the Bureau of Labor Statistics, Department of Labor of the United States of America." [Emphasis added.]

This language seems to indicate that the parties had contemplated the time and manner of termination of both the "alimony" and the enumerated medical responsibilities and categorically decided upon "alimony" to terminate upon Elizabeth's death and not her remarriage. This language, when combined with the fact that Elizabeth received no income-producing business assets, suggests that the $2,500 per month was intended, at least in part, to be property distribution.[2]

---

1. The parties sharply disagreed as to whether the attorney who prepared the pre-divorce agreement was employed to represent both parties or was employed separately by and represented only Keith. In the memorandum opinion and order granting motion for modification of judgment, the court found that the attorney represented both parties in the preparation of the agreement. The court further concluded that the attorney acted more in the capacity of a "mere scrivener" than as a legal counselor.

2. In *Seablom* we analyzed the effect of certain language in a settlement agreement. The portion of the agreement which is of interest called

for "alimony" in the sum of $14,400 payable in 36 monthly installments at the rate of $400 per month, and that "The payments shall not terminate due to the death or remarriage of either party". We concluded in *Seablom* that payments which do not terminate upon the obligee's death *suggest* property distribution. *Seablom v. Seablom*, 348 N.W.2d 920, 924 (N.D. 1984).

In the instant case the payments do terminate upon the obligee's death. *Seablom* suggests that the agreement now before the court could be viewed as spousal support. However, *Seablom* further states that to be spousal support, the provision must "effectuate to the purposes of

Elizabeth's contention that the $2,500.00 per month was not meant solely as spousal support is further corroborated by the record. The record demonstrates that Elizabeth would not be a likely candidate for permanent spousal support. This is evidenced by several facts. The short duration of the marriage would not normally favor an award of permanent spousal support. Further, Elizabeth is a young woman who is presently employed as a licensed real estate agent. Also, supporting Elizabeth's position is an affidavit in the record taken from a business associate of Keith's. The affiant recalls a conversation with Keith about the $2,500.00 per month payment to Elizabeth. During the conversation Keith informed the affiant that the sum was to be paid to Elizabeth for the rest of her life as a "settlement" and was not to be terminated upon remarriage.

A portion of the $2,500.00 per month may have been rehabilitative spousal support. Until August 1981, the time of the divorce, Elizabeth was apparently assisting Keith in family business and acting as a full-time mother. By 1983 Elizabeth had moved to Bismarck and was selling real estate. Without the payment from Keith, Elizabeth may have had a very difficult time moving and readjusting her life and career. These circumstances support an award of rehabilitative spousal support.

The obscure labeling, "alimony, support and maintenance", allows a variety of interpretations as to the nature of the award. We discourage the use of the term "alimony" and, instead, direct the trial judge, attorneys, and parties to a divorce action to use specific language which more precisely connotes the type of award granted or sought.

This leads us to a second problem, the first having been the confusion arising from the use of the term "alimony". The second problem, which often becomes apparent on review of a default divorce, is the lack of a property listing. The lack of a property listing allows both parties, on appeal, to retrospectively place unsubstantiated values on the property owned at the time of the divorce and to request this court to separate fact from fiction.

■ In a contested divorce, Rule 8.3 of the North Dakota Court Rules clearly demands that the parties and their attorneys jointly prepare a complete listing of their marital property and debts. This listing is to be filed with the clerk of court and then obviously becomes a part of the record. Regrettably this rule does not extend to a default divorce, such as in the instant case. We once again suggest that a listing, similar to an 8.3. listing, be prepared for each default divorce. *See Eberhardt v. Eberhardt*, 301 N.W.2d 137, 143 (1981). This court is powerless to review a property distribution scheme when the record does not include a comprehensive listing and valuation of the property owned and debts accumulated by the parties as of the date of divorce. When presented with a record which lacks a listing and valuation of property, we are given little choice but to remand and place the trial court, attorneys, and parties to the divorce in the unenviable position of reconstructing a listing of the marital property and corresponding values at the time of the divorce.

■ We reverse and remand that portion of the amended judgment concerned with the "alimony" as awarded. The trial court is to conduct an evidentiary hearing which establishes the items and the values of the marital property at the date of divorce. We further instruct the trial court to particularize the division of the $2,500 per month "alimony" payment to Elizabeth, *i.e.*, by identifying what portion of the "alimony" constitutes property distribution, permanent spousal support, rehabilitative spousal support, or child support.

We also direct the trial court on remand to determine in conjunction with the afore-

spousal support". In light of the circumstances of the present case and the record, we conclude that the instant provision is not determinative of spousal support.

said evidentiary hearing whether or not there are extraordinary reasons for not terminating those funds determined to be for permanent spousal support or maintenance notwithstanding that the defendant has remarried.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.