Jeffrey A. LaVOI, Plaintiff, Appellant
and Cross–Appellee,

v.

Marlys A. LaVOI, Defendant, Appellee
and Cross–Appellant.

Civ. No. 930008.

Supreme Court of North Dakota.

Sept. 8, 1993.

McConn, Fisher, Olson & Daley, Grand Forks, for plaintiff, appellant and cross-appellee; argued by Patrick W. Fisher.

Triplett Law Office, Grand Forks, for defendant, appellee and cross-appellant; argued by Constance L. Triplett.

MESCHKE, Justice.

On appeal from a divorce decree, Jeffrey A. LaVoi challenges the amount and duration of spousal support awarded to Marlys A. LaVoi, who cross-appeals for attorney fees on the appeal. We affirm.

Jeffrey and Marlys were married in 1962. Throughout their marriage of thirty years, Jeffrey primarily was the economic provider and Marlys primarily cared for their five children, in accordance with Jeffrey's desire that Marlys stay home with the children, rather than work outside the home.

The divorce decree awarded Jeffrey and Marlys joint legal custody of the two children still minors, 17–year–old Bobbi Jo and 13–year–old John. Jeffrey was awarded physical custody and Marlys was awarded reasonable visitation. Because of her limited income, Marlys was not ordered to pay child support.

The trial court divided personal property valued at $23,052.99 to Jeffrey and valued at $23,885.21 to Marlys. The court allocated debts of $23,067.40 (exclusive of their home mortgage of $71,469.78) to Jeffrey and debts of $4,557.37 to Marlys. The trial court valued the home at $166,000 and gave Jeffrey the right to buy it at that price upon assuming the mortgage. The court ordered that the proceeds of the home equity be split, with Marlys to receive $5,000 less than Jeffrey because of the disparity in the amount of debts allocated between them.

At the time of the divorce, 47–year–old Jeffrey, who has a two-year Associate Degree in Agriculture and Business, was employed by the Grand Forks John Deere dealership. The trial court found that Jeffrey had a net income of $3,200 per month, after a retirement plan deduction of four percent. The trial court also found that Jeffrey's employer provided "the use of a company vehicle and gas and maintenance even for his personal use," that "should be valued at least in the range of $400.00 to $500.00 per month."

At the time of the divorce, 47–year–old Marlys, who has a high school diploma, was working part-time at a Grand Forks restaurant, earning $5.25 per hour and receiving no employer-furnished health insurance or other benefits. The trial court found Marlys's income "to be about $500.00 per month net." The court further found: "With her limited education and her present age and experience, it would appear difficult for Marlys to obtain a job comparable to Jeff's. She may be able to clear about $700.00 per month reasonably."

The trial court found that "Marlys is substantially disadvantaged by the divorce" and awarded her permanent spousal support until she dies or remarries, according to the following schedule: (1) $500.00 per month pending sale of the house; (2) $1,300.00 per month from the month after the house is sold until Jeffrey ceases to support the parties' minor children; and (3) $1,600.00 per month from the month after Jeffrey stops supporting John until Marlys reaches the age of 65, when the support is reduced to $1,250.00 per month.

Jeffrey appealed, contending that the spousal support award is clearly erroneous as to both duration and amount. Jeffrey asked that we "remand this case with instructions to the Trial Court to amend the judgment and to provide for rehabilitative spousal support for a limited term of no more than four years at $600.00 per month." Marlys cross-appealed, contending that she should be awarded attorney fees for this appeal.

A trial court's spousal support determinations are treated as findings of fact that will not be set aside on appeal unless clearly erroneous. *Bagan v. Bagan,* 382 N.W.2d 645 (N.D.1986); *Weir v. Weir,* 374 N.W.2d 858 (N.D.1985). In *Weir,* this court listed a number of factors to be considered in determining if spousal support should be awarded:

> Factors to be considered when determining whether or not an award of spousal support is appropriate include the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* at 862. Other factors that may be considered in spousal support determinations include continuance of a standard of living [*Roen v. Roen,* 438 N.W.2d 170 (N.D.1989); *Bagan v. Bagan* ], and a disadvantaged spouse's lack of adequate retirement savings. *Roen v. Roen.* A trial court may consider a disadvantaged spouse's former standard of living and comparative ability for self support. *Roen v. Roen.* As we explained in *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992), "balancing the burdens created by the separation when it is impossible to maintain two households at the pre-divorce standard" is a valid consideration for spousal support.

The trial court awarded permanent spousal support, and Jeffrey contends that only rehabilitative spousal support should have been awarded, for a period of no more than four years. Permanent spousal support is appropriate to provide maintenance for a spouse incapable of rehabilitation. *Rustand v. Rustand,* 379 N.W.2d 806, 807 (N.D.1986). "Rehabilitative spousal support, on the other hand, is awarded to provide an opportunity for a disadvantaged spouse to seek education, training, or experience that will enable this spouse to become self-supporting." *Id.*

"Preferably, spousal support is to rehabilitate a disadvantaged spouse. However, it may be required indefinitely to maintain a spouse who cannot be adequately restored to independent economic status." *Roen v. Roen,* 438 N.W.2d at 172. Rehabilitative spousal support allows a disadvantaged party time and resources to acquire an education or work skills. *Routledge v. Routledge,* 377 N.W.2d 542 (N.D.1985). If a party is incapable of rehabilitation, permanent spousal support may be awarded to provide traditional maintenance. *Id.*

The situations that make either rehabilitative or permanent spousal support appropriate have been aptly distinguished in 24 Am. Jur.2d, *Divorce & Separation* (1983).

> [R]ehabilitative alimony is most appropriate where the dependent spouse is still young, the marriage was of relatively short duration, and the dependent spouse has the ability to develop or redevelop qualifications for self-support.

*Id.,* § 746.

> [R]ehabilitative alimony is not appropriate, and ... permanent alimony is the proper award, where the dependent spouse has minor children of the marriage to care for, where the dependent spouse has health problems rendering rehabilitation unlikely, where the opportunity for rehabilitation as a substantial wage-earner does not exist, and where the marriage has been of long duration.

*Id.,* § 747. These factors were appropriately applied by the trial court in this case.

This was a marriage of long duration—30 years. When this divorce action was begun, Marlys had not been employed outside the home for nearly 25 years. She has only a high school diploma. At 47 years of age, Marlys "is now at an age at which entry into the employment market may prove to be somewhat difficult." *Weir v. Weir,* 374 N.W.2d at 862. There is a significant disparity in the parties' earning abilities. It is unlikely that Marlys can be economically "rehabilitated to the extent that she will attain an earning capacity comparable to that of her husband" or "sufficient to maintain the standard of living she enjoyed during the marriage." *Id.* at 864. Marlys lacks ade-

quate retirement savings. Without spousal support, Marlys certainly "was in no position to continue her accustomed standard of living" and it appears that she "cannot be adequately restored to independent economic status." *Roen v. Roen,* 438 N.W.2d at 172. We conclude that the trial court's award of permanent spousal support, rather than rehabilitative spousal support for a limited period of time, is not clearly erroneous.

■ Obviously, an award of spousal support must be made in light of the supporting spouse's needs and ability to pay support. *Weir v. Weir,* 374 N.W.2d at 865. The trial court found that Jeffrey had a net income of $3,200 per month, plus an employer-furnished vehicle for his personal use valued at over $400 per month. The trial court found that Marlys, on the other hand, had a net income of about $500 per month and "may be able to clear about $700.00 per month reasonably."

The parties did not have property capable of giving them substantial incomes. In this case, like many others, "when the property is divided between the parties, it is not sufficient to permit each of the parties to have the same standard of living after the dissolution of the marriage as each enjoyed during the marriage." *Svetenko v. Svetenko,* 306 N.W.2d 607, 612 (N.D.1981). Often, in deciding spousal support, "[t]he determinative factor is the sufficiency of income to permit each party to maintain apart the standard of living enjoyed together." *Bagan v. Bagan,* 382 N.W.2d at 646. Here, there is not enough total present or anticipated income for each spouse to maintain separately the standard of living that they enjoyed together.

■ We explained in *Wahlberg v. Wahlberg,* 479 N.W.2d at 145:

The need which evidences that one spouse has been disadvantaged by the divorce and that rehabilitative support is, therefore, appropriate is not limited to the prevention of destitution.

Permanent spousal support also need not be limited to the prevention of destitution. As we have already explained, maintenance of a supported spouse's standard of living is an appropriate consideration, as is balancing the burdens created by separation where it is impossible to maintain two households at the parties' pre-divorce standard of living. The amount of spousal support awarded recognizes the parties' disparate earning abilities, allows Marlys a modest opportunity to plan some retirement savings, and appears to be "an attempt to provide an equitable *sharing of the overall reduction in the parties' separate standards of living.*" *Weir v. Weir,* 374 N.W.2d at 864. While the amount of spousal support awarded may, perhaps, be somewhat generous in light of the parties' needs and Jeffrey's ability to pay, our review of the record has not left us with a definite and firm conviction that a mistake has been made. The amount of the trial court's spousal support award is, therefore, not clearly erroneous.

■ In her cross-appeal, Marlys requests attorney fees for this appeal. One of the principal considerations in determining whether or not to award attorney fees in marital disputes is each party's ability to pay attorney fees. *Pozarnsky v. Pozarnsky,* 494 N.W.2d 148 (N.D.1992); *Heller v. Heller,* 81 N.W.2d 124 (N.D.1957). Ordinarily, we would remand for the trial court to determine an award of attorney fees on appeal because the trial court is in a better position to consider the relevant factors. *McIntee v. McIntee,* 413 N.W.2d 366 (N.D.1987). But, in light of the property distribution, the allocation of debts, Jeffrey's custody of the remaining minor child without any child support from the noncustodial parent, and the respective incomes, the parties' abilities to pay attorney fees are relatively equal in this case. Marlys's request is denied.

We affirm.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.