1997 ND 88

**Robert J. VAN KLOOTWYK, Plaintiff and Appellee,**

v.

**Michelle L. VAN KLOOTWYK, Defendant and Appellant.**

**Civil No. 960183.**

Supreme Court of North Dakota.

May 13, 1997.

James D. Hovey (argued) and Jon J. Jensen (appearance), of Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for plaintiff and appellee.

Charles L. Chapman (argued), of Chapman & Chapman, Bismarck, for defendant and appellant.

MARING, Justice.

[¶ 1] Michelle L. Van Klootwyk appeals from a district court judgment dated June 27, 1996, denying her spousal support from Robert J. Van Klootwyk. We conclude the trial court's finding Michelle is not disadvantaged by the divorce and is not in need of rehabilitative spousal support is clearly erroneous and we reverse.

[¶ 2] Robert and Michelle Van Klootwyk were married on December 5, 1967, and have two adult children, who at the time of trial were emancipated and self-supporting. At the time of the marriage, Robert had completed two years of college. During the course of the marriage Robert worked in the radio industry, first as a disc jockey and then in the management area of radio.

[¶ 3] At the time of the marriage, Michelle had a high school education, a work history of minimum wage work, and was working as a clerk at the old GP Hotel in Bismarck, North Dakota. During the marriage Michelle worked odd jobs to assist family finances from time to time, but both Robert and Michelle agreed Michelle's primary responsibility was to care for the children and their home.

[¶ 4] The family made 27 or 28 moves in 24 years to advance Robert's career in the radio industry. At the time of trial Robert testified that his gross income for 1995 was $76,000. Robert then resided in Boston, Massachusetts, where he was the operations director for Fairbanks Communication.

[¶ 5] In the fall of 1987, Michelle went back to school at Central Oregon Community College in Bend, Oregon. In the fall of 1988, Michelle attended Spokane Community College in Spokane, Washington. When the family moved to Bismarck to join Robert in the summer of 1989, Michelle took a class at Bismarck State College and then started classes at the University of Mary. In the spring of 1991, Michelle received a bachelor's degree in nursing from the University of Mary. Following her graduation she obtained employment on the telemetry unit at St. Alexius Hospital. She graduated on May 3, 1991, and started work on May 4, 1991. Her degree in nursing from the University of Mary enabled her to earn approximately $30,000 per year.

[¶ 6] In March 1991 Robert and Michelle separated. From 1991 to 1994, Michelle continued to work as a nurse in Bismarck. In September of 1994 Michelle started a two year nurse practitioner program at the University of Mary. Michelle obtained her degree in May 1996.

[¶ 7] At the time of trial on January 3, 1996, Michelle testified her starting salary as a nurse practitioner would be anywhere from $40,000 to $55,000 per year.

[¶ 8] Michelle testified her cost of obtaining her undergraduate nursing degree at the University of Mary was about $5,000 per semester or a total of $20,000. Marital funds paid for approximately one half of that amount. Robert testified the family paid about $10,000 a year for tuition for Michelle to go to the University of Mary. Michelle testified she had to take out a loan for $6,500 to pay for her undergraduate tuition and at the time of trial the loan had been paid down to approximately $2,000. Michelle further testified that at the time of her graduation from the University of Mary in May of 1996 she will owe approximately $32,000 in student loans, including both graduate and undergraduate costs, living costs and help given to her daughter. Michelle estimated the cost of her two years in the University of Mary's graduate program was $18,000, which included $14,000 for tuition and $4,000 for books. She paid these costs by obtaining student loans which she had to start repaying commencing six months after her graduation.

[¶ 9] The parties accumulated very few assets during their marriage. They borrowed money from both of their parents and neither of those debts has been completely paid. In 1991 they filed for bankruptcy. At the time of trial the family occupied rented property and their only assets consisted of some household goods and furniture.

[¶ 10] Robert Van Klootwyk admitted he had more than one affair during the course of their marriage and that an affair in 1991 led to the separation of the parties in March 1991. Robert also conceded that his consumption of alcohol had been a detriment to the marriage and became a problem in the marriage. Michelle testified Robert struck her on "many occasions" during the course of the marriage and that on two occasions his conduct resulted in 911 calls.

[¶ 11] On April 24, 1996, the court entered a judgment granting a divorce and dividing the parties' marital property. The court also decreed each would assume the separate indebtedness incurred since their separation in March 1991. Robert would be responsible for the existing indebtedness to his mother, the IRS, and a former business associate. Michelle would be responsible for the student loan debt she incurred to obtain her nurse practitioner degree. The court denied Michelle's request for rehabilitative spousal support and she appealed.

[¶ 12] Michelle Van Klootwyk asserts the trial court erred in denying her request for rehabilitative spousal support. She claims she incurred debt to obtain her nurse practitioner degree and she requests a support award of $430.00 per month for ten years to pay that debt.

[¶ 13] In *Smith v. Smith*, 534 N.W.2d 6, 12 (N.D.1995), we summarized our standard for reviewing a trial court's spousal support decision:

There are two types of spousal support. Permanent spousal support is appropriate to provide traditional maintenance for a spouse who is incapable of rehabilitation. *van Oosting v. van Oosting*, 521 N.W.2d 93, 100 (N.D.1994). Rehabilitative support

is appropriate to restore an economically disadvantaged spouse to independent status or to equalize the burden of divorce. *Lill v. Lill,* 520 N.W.2d 855 (N.D.1994). A trial court's spousal support decisions are treated as findings of fact which will not be set aside on appeal unless clearly erroneous. *LaVoi v. LaVoi,* 505 N.W.2d 384, 386 (N.D.1993). The complaining party bears the burden of demonstrating on appeal a finding of fact is clearly erroneous. *Sateren v. Sateren,* 488 N.W.2d 631 (N.D.1992). A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) only if it is included by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the court is left with a firm conviction that a mistake has been made. *McDonough v. Murphy,* 539 N.W.2d 313, 316 (N.D. 1995).

[¶ 14] This court has long held the trial court must consider the *Ruff–Fischer* guidelines in deciding whether to award spousal support. *Lill v. Lill,* 520 N.W.2d 855, 856 (N.D.1994). The *Ruff–Fischer* guidelines include:

> "the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material." *Weir v. Weir,* 374 N.W.2d 858, 862 (N.D.1985).

*Id.* Although the trial court does not need to make specific findings as to each guideline, it must specify a rationale for its determination. *Wiege v. Wiege,* 518 N.W.2d 708, 710 (N.D.1994). A review of the trial court's findings of fact reveals that its specified rationale for its finding that Michelle was not disadvantaged by the divorce was she "received education during the marriage, has an adequate salary and is self supporting."

[¶ 15] There are two different concepts of rehabilitative spousal support. *See*

Marcia O'Kelly, *Entitlements to Spousal Support After Divorce,* 61 N.D.L.Rev. 225, 242 (1985). One is a "minimalist doctrine" and the other a more "equitable concept" of rehabilitative support. *Id.* at 242–43. The "minimalist doctrine" has as its objective to educate and retrain the recipient for minimal self-sufficiency. *Id.* at 242. The "equitable doctrine" tries to enable the disadvantaged spouse to obtain "adequate" self-support after considering the standard of living established during the marriage, the duration of the marriage, the parties' earning capacities, the value of the property and other *Ruff–Fischer* factors. *Id.* at 244–55.

[¶ 16] This court has not adopted the "minimalist doctrine"—one where the only determination is whether the recipient of support is merely "self-supporting." We have upheld rehabilitative spousal support where the recipient is already working full time. *See, e.g., Wiege v. Wiege,* 518 N.W.2d 708, 710 (N.D.1994); *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992); *Williams v. Williams,* 302 N.W.2d 754, 758 (N.D.1981). In *Wahlberg,* the husband argued that because the wife was already self-supporting she was not "disadvantaged." *Wahlberg* at 145. This court stated, "[t]he need which evidences that one spouse has been disadvantaged by the divorce and that rehabilitative support is, therefore, appropriate is not limited to the prevention of destitution." *Id.* We have held a spouse is "disadvantaged" who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity. *Id.* We have also stated a valid consideration in awarding spousal support is balancing the burdens created by divorce. *Id.*

[¶ 17] Michelle contributed during the marriage to Robert's increased earning capacity. She moved 27 to 28 times in 24 years to advance Robert's career. Robert acknowledged this fact. Michelle spent from 1967 to 1987 caring for the parties' children and home and working at "odd jobs." In the fall of 1987, she went back to school and ultimately received her nursing degree in April 1991. She incurred approximately

$20,000 of debt in order to obtain that degree. The evidence in the record reveals Robert helped pay off some of this debt but Michelle borrowed from her brother and took out student loans, too. She did not get her diploma until 1994, because the University of Mary had not been paid in full until then. In March 1991, Michelle and Robert separated. Robert basically did not provide Michelle any support during their separation, which lasted until the time of the divorce. In September 1994, Michelle enrolled in a nurse practitioner program. She testified at the January 1996 trial she would graduate in May 1996. The record indicates Michelle incurred approximately $18,000 of debt for tuition and books in order to obtain this advanced degree. At the time of the divorce, Robert was earning a gross salary of $76,000. The evidence indicated Michelle was making approximately $30,000 as a nurse, but she had salary potential of $40,000 to $55,000 after receiving her nurse practitioner degree. The disparity in the parties' earning capacities of $76,000 and $30,000 is one of the factors which clearly supports an award of spousal support to Michelle. Even if Michelle earned the top projected salary for a nurse practitioner of $55,000, she would still earn $21,000 per year less than Robert. In addition, she has the burden of paying off the remaining $18,000 of school debt. The fact that Michelle began her economic self-rehabilitation during the marriage should not deprive her of rehabilitative spousal support, especially when the price of her going from financially dependant to "adequately" self-supporting is neither borne nor shared by her former spouse.

[¶ 18] Application of other *Ruff–Fischer* guidelines to the facts further mandate rehabilitative spousal support for Michelle. There are no real assets in this divorce other than some furnishings and personal property. *See, e.g., Pfliger v. Pfliger,* 461 N.W.2d 432, 436 (N.D.1990)(in addition to earnings, other sources of income are important in setting the amount of support for a disadvantaged spouse). The marriage is a long term marriage of approximately 28½ years, 20 years of which Michelle devoted to caring for the parties' children, maintaining the home and building Robert's career in the radio industry while she deferred pursuit of any career for herself. *See, e.g., Welder v. Welder,* 520 N.W.2d 813, 819 (N.D.1994)(foregoing opportunities and lost advantages as a consequence of the marriage are valid considerations in spousal support determination). Michelle was 47 years old and middle-aged at the time of the divorce. Robert admitted to adultery and having more than one affair during the marriage. The record indicates the separation in March 1991 was caused by Robert's adultery. The record also evidenced Robert's drinking and physically abusive behavior toward Michelle on "many occasions." *See, e.g., Mees v. Mees,* 325 N.W.2d 207, 208–209 (N.D.1982)(the conduct of the parties is one of the factors to be considered). Michelle has clearly established she has been disadvantaged by the divorce and is in need of rehabilitative support.

[¶ 19] Our decision in *Wahlberg* is not "clearly distinguishable" from this case as asserted by Robert. Although Robert did not receive additional education during the marriage, he established and advanced a career in the radio industry which enabled him to earn a substantial salary between $65,000 and $76,000 per year. Michelle did receive a bachelor's nursing degree and a postgraduate degree during the marriage, but the evidence established that at the time of the divorce there remained at least $18,000 of debt related to tuition and books. This debt was assigned to Michelle, not Robert, yet Robert still wants to take full advantage of the degrees earned by Michelle. These degrees do not even bring her close to his earning capacity in the best case scenario.

[¶ 20] The minority opinion relies on the trial court's finding that Michelle is "self-supporting" and asserts this was true even before she earned the postgraduate degree. This approach embraces the concept of "minimalist" support and ignores the other *Ruff–Fischer* guidelines. It also fails to recognize that although Michelle "earned" these degrees during the marriage, she did not receive the benefit of marital funds paying the debt incurred in obtaining these degrees, which degrees provided her with a higher earning capacity to Robert's advantage.

[¶ 21] After reviewing the law and the record, we conclude the trial court's finding that Michelle was not disadvantaged was induced by an erroneous view of the law and we are left with a definite and firm conviction that a mistake has been made.

[¶ 22] We reverse and remand for the trial court to award rehabilitative spousal support to Michelle consistent with Robert's ability to pay.

[¶ 23] MESCHKE, J., concurs.

NEUMANN, Justice, concurring specially.

[¶ 24] The dissent points out that many of the facts relied upon by the majority (unnecessarily, I think) to support its decision were disputed or were balanced by countervailing factors and considerations in the evidentiary record. While that may be true, it overlooks the fact that the trial court, in finding Michelle was not disadvantaged by the divorce, clearly applied the minimalist concept of spousal support, a concept this court has not adopted in the past and which this court now clearly (and correctly, I think) rejects.

[¶ 25] Beyond that, I write separately to emphasize Michelle Van Klootwyk's work history. When the parties married she had only a high school education and very little work experience. During most of the marriage, she deferred any effort to pursue an education and a career of her own in order to make a home for Robert Van Klootwyk and care for his children, while he pursued his own career through 27 or 28 moves across the country. It was not until 1987, that Michelle began going to college. Her efforts led to a bachelor's degree in nursing in 1991, and ultimately to a nurse practitioner's degree in 1996, some 29 years after the marriage.

[¶ 26] I suggest that any one who attempts to begin a career at Michelle's stage in life, after deferring meaningful work and education for 24 years in order to support her husband's pursuit of his own career, a career the fruits of which she will no longer share, is presumptively disadvantaged by her divorce. I would also argue that Robert Van Klootwyk has shown nothing which would overcome that presumption.

[¶ 27] I, therefore, concur in much of the majority opinion, and in its result. The trial court's finding that Michelle Van Klootwyk is not disadvantaged by this divorce is clearly erroneous and must be reversed. The case must be remanded for consideration of an appropriate award of spousal support.

[¶ 28] William A. Neumann

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 29] I agree Michelle Van Klootwyk is entitled to spousal support to enable her to dispose of the $18,000 debt for educational costs for her postgraduate degree. It is, after all, her degree which enables her to earn an income that, although less than Robert Van Klootwyk's income, is sufficient to determine she is not further disadvantaged by the divorce.

[¶ 30] I would not leave the issue as open-ended as does the majority opinion, i.e., "spousal support consistent with Robert's ability to pay." This is, after all, a matter of spousal support, not child support, and ability to pay is only one factor.

[¶ 31] Gerald W. Vande Walle

SANDSTROM, Justice, dissenting.

[¶ 32] The question here is not whether the trial court could have awarded spousal support in this case; the question is whether it was clear error for the trial court not to make such an award. Because the trial court's finding Michelle Van Klootwyk not disadvantaged by the divorce and not in need of rehabilitative or permanent spousal support is supported by the record, I would affirm.

[¶ 33] Sadly, in its retrial of this case, the majority omits facts and evidence which are inconsistent with its position and which support the reasonableness of the trial court's findings. "Our review of findings of fact is limited by Rule 52(a), N.D.R.Civ.P." *Chaussee v. Thiel,* 520 N.W.2d 789, 791 (N.D.1994). "In reviewing findings of fact, the evidence must be viewed in the light most favorable to

the findings." *Chaussee.* I highlight facts omitted or obscured by the majority opinion.

[¶ 34] The majority states at ¶ 20:

"[A]lthough Michelle 'earned' these degrees during the marriage, she did not receive the benefit of marital funds paying the debt incurred in obtaining these degrees...."

These are misleading words. Robert Van Klootwyk testified he paid for almost all of Michelle Van Klootwyk's undergraduate college and living expenses, including tuition, room and board, books, transportation, insurance, and clothing, totaling between $14,000 and $20,000. She testified she didn't have it "figured out exactly," but he probably paid "for about half of it."

[¶ 35] Upon earning her undergraduate nursing degree, Michelle Van Klootwyk accepted a nursing job at a local hospital at a salary of about $30,000. While taking postgraduate courses, she continued working as a nurse, earning between $20,000 and $30,000 per year. She testified she was able to pay all her living expenses while working as a registered nurse and taking postgraduate courses. She was self-supporting even before earning a postgraduate degree; her income was *above* the annual average pay of North Dakotans. *See* North Dakota Department of Economic Development & Finance, *North Dakota Details, Labor, Wages* (May 13, 1997) <http://www.growingnd. com/details/details_labor.html> ("The average annual pay in North Dakota is $19,893."). As Justice Neumann wrote in *Heley v. Heley,* 506 N.W.2d 715, 719 (N.D.1993), "Rehabilitative spousal support, on the other hand, is awarded to provide a disadvantaged spouse time and resources to acquire an education, training, work skills, or experience that will enable the spouse to become self-supporting." And as Justice VandeWalle wrote in *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992):

"We have, however, also described the purpose of rehabilitative support in terms of enabling a disadvantaged spouse to achieve 'suitable' and 'appropriate' self-support. *E.g. Bullock v. Bullock,* 376 N.W.2d 30, 31 (N.D.1985) [*citing* O'Kelly, *Three Concepts of Alimony in North Dakota Law,* 1 N.D. Faculty J. 69, 75 (1982) ]. Accordingly, we have affirmed as appropriate awards of rehabilitative spousal support under a variety of circumstances which relate to the disadvantaged spouse's capacity for self-support."

Here, Michelle Van Klootwyk leaves the marriage on the threshold of completing her postgraduate degree. Her *beginning* salary with her postgraduate degree will place her *far* above the median household income in North Dakota and will be more than *double* the annual average pay of North Dakotans. *See* U.S. Bureau of the Census, *1990 U.S. Census Data: Database C90STF3A* (May 13, 1997) <http://venus.census.gov/cdrom/lookup> (median household income in North Dakota: $23,213) and *North Dakota Details, Labor, Wages.*[1]

[¶ 36] She testified the educational costs for her postgraduate degree, including books, totaled $18,000. However, her total debt is $32,000. In at least partial explanation for her large debt, the record evidence shows she has purchased a 1993 Ford Explorer, she has made monthly mortgage payments for her adult emancipated daughter's home since September 1995, and she has also purchased food and clothing for her adult daughters and her granddaughters. She wants Robert Van Klootwyk to pay the entire $32,000 debt.

[¶ 37] Omitted from the majority's recitation, the record shows Robert Van Klootwyk's necessary living expenses in Boston are considerably higher than Michelle Van Klootwyk's living expenses in Bismarck. His net monthly income is $4,176, and he lists monthly expenses of about $3,900. She lists monthly expenses (including attorney

---

1. Although Marcia O'Kelly, *Entitlements to Spousal Support After Divorce,* 61 N.D.L.Rev. 225, 257 (1985), relied on so heavily by the majority, states "[f]ault is completely irrelevant to entitlements to rehabilitative maintenance," the majority seeks, at ¶ 18, to bolster its case, claiming Michelle Van Klootwyk is disadvantaged because Robert Van Klootwyk drank, committed adultery, and was abusive. None of these "facts" were found by the trial court. The majority cites no authority for its premise that a person is "disadvantaged," in a legal sense, by the spouse's non-economic misconduct.

fees, but excluding school costs) of about $2,300. The evidence also shows she has been able to build a retirement account and put some money in savings. Meanwhile, he has been able to meet his expenses in Boston, but does not have a retirement account or any substantial assets and does not own an automobile. He assumed the majority of the marital debt,[2] which will hinder his ability to accumulate substantial assets or savings in the foreseeable future.

[¶ 38] Michelle Van Klootwyk argues our decision in *Wahlberg* supports her argument the trial court's denial of spousal support is clearly erroneous. In *Wahlberg*, this Court held the award of spousal support was *not* clearly erroneous. In that case, the husband completed master's and doctorate degrees in social work during the marriage. The parties' marital estate was depleted to the extent of $19,000 for the husband's education, but the wife received no additional education during the marriage. The wife had a nurse's diploma certificate when she married, but because she did not have a bachelor's degree in nursing, she had only limited job options in the nursing field. We upheld the trial court's spousal support award requiring the husband to pay one-half the educational expenses incurred by his wife to secure a bachelor's degree in nursing. This case is clearly distinguishable.

[¶ 39] Robert Van Klootwyk entered this marriage with two years of education and did not receive additional education during the marriage. However, Michelle Van Klootwyk obtained a bachelor's degree in nursing during the marriage, which she concedes gives her the earning capacity to meet her own expenses, and at the time of the divorce had almost completed her postgraduate degree. In addition, Michelle Van Klootwyk has voluntarily made monthly payments on her married daughter's mortgage and bought clothing and other things for her adult daughters and grandchildren. Michelle Van Klootwyk lived with her daughter for only two months in 1995. She continued, however, to make her daughter's mortgage payments even though, at the time of trial, she was living with her mother and sharing the expenses of that household.

[¶ 40] Although she has college degrees, a car, and a retirement account, and he has none of these, the majority says Michelle Van Klootwyk is a disadvantaged spouse.

[¶ 41] At the conclusion of the testimony, and after considering all the facts and evidence, including that omitted by the majority, the trial court stated Michelle Van Klootwyk's request for spousal support "is unsubstantiated" and "she is not disadvantaged by this divorce." "The trial judge has the responsibility of weighing the evidence as well as determining the credibility of the witnesses." *Bullock v. Bullock*, 376 N.W.2d 30, 31 (N.D.1985). The record evidence supports the trial court's findings, and we should therefore conclude the court's denial of the request for spousal support is not clearly erroneous.

[¶ 42] Dale V. Sandstrom

---

**2.** Robert Van Klootwyk voluntarily assumed the marital debt, including a $7,800 debt from a failed business venture in 1991, a $12,000 debt to the Internal Revenue Service, and a $7,000 debt to his mother for money the parties borrowed from her.